In the Matter of RODNEY A. RICHARDS, Respondent, v UNITED HEALTH SERVICES, Respondent, and BLUE CROSS, Appellant.

JEAN A. CHIESI, Respondent, v LUMBERMENS MUTUAL CASUALTY COMPANY OF KEMPER INSURANCE COMPANIES et al., Defendants.

BLUE CROSS, Third-Party Plaintiff-Appellant, v BINGHAMTON GENERAL HOSPITAL, a Division of UNITED HEALTH SERVICES, INC., Third-Party Defendant.

Third Department, December 4, 1986

APPEARANCES OF COUNSEL

*Bond, Schoeneck & King (John G. McGowan* of counsel), for appellant.

*Rodney A. Richards,* respondent *pro se,* and for Jean A. Chiesi, respondent.

**OPINION OF THE COURT**

HARVEY, J.

This appeal, involving two consolidated cases, raises issues as to the rights of the parties to certain no-fault benefits. In 1981, Jean A. Chiesi sustained injuries in a one-car accident which caused her to be hospitalized for over five months at Binghamton General Hospital, a Division of United Health Services, Inc. (UHS). The insurer of her automobile, Lumbermens Mutual Casualty Company of Kemper Insurance Companies (Kemper), disclaimed her application for no-fault insurance benefits. Chiesi then applied to Blue Cross for coverage of her medical costs. Blue Cross apparently paid UHS about

$31,000,[1] which was accepted by UHS as full payment for Chiesi's medical expenses.

Chiesi then retained Rodney A. Richards to represent her in a suit against Kemper seeking no-fault benefits under her policy of insurance with Kemper. The retainer provided for Richards to receive a one-third contingency fee. The matter moved to trial where Chiesi prevailed and, on appeal, the judgment was affirmed (see, Chiesi v Lumbermens Mut. Cas. Co., 97 AD2d 884). Kemper then paid approximately $29,000 to Chiesi for loss of earnings and applicable interest. Richards collected a one-third contingent fee on this amount.[2] Additionally, Kemper paid UHS approximately $25,000 plus interest of approximately $7,000 for medical services rendered to Chiesi. Although Richards claimed a one-third attorney's fee on this amount, UHS refused to remit the same, asserting that the contingency fee arrangement was not enforceable. Upon receipt of the money from Kemper, UHS admitted that it was not entitled to the principal sum since it had been paid for its medical services by Blue Cross. The combined payments by Kemper exhausted benefits available to Chiesi under the no-fault law (see, Insurance Law § 5102 [a], [b]).

Chiesi then commenced the instant declaratory judgment action against Kemper and Blue Cross asserting that Kemper had no obligation to pay UHS since Blue Cross had already paid her medical bills. The result of such a declaration would be that Chiesi could then receive additional no-fault benefits from Kemper for loss of earnings since her total available benefits would not be exhausted. Blue Cross asserted a counterclaim against Chiesi seeking the difference between the $25,000 paid by Kemper to UHS and the $31,000 it had paid to UHS. It also commenced a third-party action to recover the $25,000 plus interest paid by Kemper to UHS. Richards commenced a proceeding on behalf of himself asserting that his fee arrangement with Chiesi entitled him to one third of the amount sent by Kemper to UHS.

The cases were consolidated and the parties sought summary judgment declaring their rights to the no-fault pay-

1. We have rounded off all the figures. As was noted by Special Term, many of the dollar amounts are simply not clear from the information provided by the parties. Special Term withheld final determination pending a specific accounting or, in the alternative, a stipulation by the parties.

2. Richards also recovered from Kemper $3,800 in legal fees set under the State no-fault arbitration sponsored by the American Arbitration Association.

ments. Special Term's decision included findings that Blue Cross was entitled to reimbursement for the payment it made to UHS in 1981, but only up to the amount that Kemper had paid to UHS for Chiesi's medical bills. The court further determined that this amount was subject to Richards' contingency fee arrangement with Chiesi and that the interest on this amount was payable to Chiesi. This appeal by Blue Cross ensued.

Blue Cross' right to reimbursement of the funds paid by Kemper for Chiesi's medical expenses is based upon the language of its contract with Chiesi. Under the "Coordination and Non-Duplication of Benefits" provisions of the contract, Blue Cross, as secondary insurer, was entitled to reimbursement when Kemper paid no-fault benefits to cover the same medical expenses which Blue Cross had paid (see, Dudley v Blue Cross, 63 AD2d 813).

Blue Cross contends that it should also receive the interest paid by Kemper on the medical expenses. We cannot agree. When Kemper disclaimed liability for Chiesi's medical expenses, Blue Cross covered these costs pursuant to the terms of its contract with Chiesi to provide for expenses not covered by no-fault. It was the terms of the contract which provided Blue Cross with the right to seek reimbursement for a portion of the funds Chiesi successfully obtained from its no-fault insurer following a trial. The contract between Blue Cross and Chiesi, however, does not provide for Blue Cross to recoup any interest cost. Further, the Superintendent of Insurance has provided that interest on overdue payments be made to the applicant or the applicant's assignee (11 NYCRR 65.15 [g]). No valid assignment was made by Chiesi and, thus, she is entitled to the interest.

Blue Cross next argues that Special Term erred when it failed to apportion Kemper's no-fault payments between medical expenses and loss of earnings in the order in which they occurred. Payment of first-party benefits are to be made in the order the loss is incurred (Insurance Law § 5106; 11 NYCRR 65.15 [m]). The maximum amount of first-party benefits for basic economic loss is $50,000 (Insurance Law § 5102). Here, after losing its appeal in this court, Kemper paid Chiesi fully for all loss of earnings and then allocated what remained of the $50,000 in first-party benefits to pay her medical expenses. The result was that Kemper allocated less for medical expenses than the amount which Blue Cross had previously paid. There is no indication that Kemper attempted to pay benefits

in the order in which the losses were sustained, nor can we ascertain from the record the order in which losses occurred. Hence, we conclude that the matter should be remitted to Supreme Court for a determination as to the order in which Chiesi incurred loss of earnings and medical expenses up to the maximum amount of her first-party benefits. Once this determination is made, Kemper's no-fault payment should then be apportioned between Chiesi's medical expenses and loss of earnings. Blue Cross is then entitled to reimbursement for the amount it paid UHS on behalf of Chiesi up to the amount Kemper's no-fault payments were apportioned to Chiesi's medical expenses.[3]

Finally, Blue Cross asserts that Special Term erred in awarding Richards a lien on one third of the no-fault benefits paid to UHS by Kemper. Richards has through his efforts, in essence, created a fund which will benefit Blue Cross. In such cases, the attorney has the right to *reasonable* compensation from the fund *(Breier v Government Employees Ins. Co.,* 79 AD2d 967; *see, Matter of Continental Vending Mach. Corp.,* 318 F Supp 421, 424-429; 7 NY Jur 2d, Attorneys at Law, § 124, at 12-13). Accordingly, Richards' recovery should be in an amount to be determined by Supreme Court as reasonable under the particular facts and circumstances of this case.

KANE, J. P., MAIN, YESAWICH, JR., and LEVINE, JJ., concur.

Order modified, on the law, without costs, by reversing all portions thereof except the directive that United Health Services pay $7,012.27 to Jean A. Chiesi; matter remitted to Supreme Court for further proceedings not inconsistent herewith; and, as so modified, affirmed.

---

3. It is not clear from the record what this amount is. It appears to be either $31,111.79 or $26,111.79, depending on whether Kemper initially paid $5,000 to UHS which was credited to Blue Cross.